May it please the Court, Scott Hunt appearing on behalf of Heidi Cox, plaintiff in this matter. The primary issue in the ADA portion of this appeal is whether plaintiff is a qualified individual with a disability under the ADA. The District Court made several errors in determining and ruling that she was not, one of which was accepting defendant's assertion that lifting, bending, and standing on ladders were essential functions of Ms. Cox's job as to restock the items at Wal-Mart. The error, chief among them, was he did that without determining if defendant had met its burden to establish what the essential functions were, which under the Bates case cited in our materials is defendant's burden when the essential functions are challenged or when the individual's qualifications as a qualified individual are challenged. The second principal error the Court made was that the Court relied upon one ambiguous statement in Ms. Cox's deposition testimony and also relied upon an unreliable disability report which was prepared by the Social Security Administration, specifically an interviewer on behalf of the Social Security Administration when Ms. Cox applied for Social Security benefits. I'd like to address that disability report first because there is a correction I need to make in our reply brief. I hate to do this. I've rarely ever had to do this, but I need to make a correction. On page 7 of our reply brief, we state in reference to the disability report, we state the accuracy of this evidence, however, is suspect because it is unknown whether this form was completed by plaintiff herself or whether the form was completed by an SSA representative, and if so, whether that representative clearly indicated that frequently, in reference to the amount of lifting the report recorded Ms. Cox having done, was approximately one-third or two-thirds of her day. The correction I need to make is that on ER 236 and 237, in questioning by defense counsel of Ms. Cox, it is established that that disability report was created by the SSA interviewer, Ms. Fritz. And as that testimony continues, the one question on the disability report that defense counsel asked about established that the question, the information recorded as to when the disability started, which is recorded as March 2007, was inaccurate in that Ms. Cox said the question posed to her was, when were you injured? So the only testimony in the record as to that document establishes, one, it was prepared by the Social Security Administration representative in interviewing Ms. Cox, that Ms. Cox did not see the document itself, that's on 236, and that at least one question is improperly recorded or doesn't accurately reflect the information supplied by Ms. Cox. That same issue of her stating that she was injured in March of 2007 and Social Security determining that that was the start of her disability runs as a central issue throughout this appeal. As a typographical correction, I need to make one more correction in the reply brief. This is in footnote 15 on page 26, and in that footnote we reference the attitude toward plaintiff having changed in June of 2008. She was already terminated by June of 2008. That should read June of 2007. And my apologies to the court for that typographical error and the unclarity of the language or the inaccurate language on page 7 of our reply brief. Having made those corrections, I think one of the simplest ways to approach this issue. Counsel, I might suggest in the future, rather than use up five minutes of your precious time making corrections, you might have sent us and counsel on the other side a written communication of that in advance. But go ahead, you've used your time. Thank you for the counsel, Your Honor. One of the simplest ways to approach the issue of whether she was qualified or not is to look at the fact that the Social Security Administration determined that she was disabled in March of 2007, and the record is clear that after March of 2007, she successfully worked for Walmart from May of 2007 through February of 2008. Counsel, can I ask you to focus on something that factually bothers me? And that is the fact that she went back to Walmart. She was a manager of some sort, isn't that correct? Well, she was a department manager, but she didn't supervise anyone. All right, but in any event, she seems to have acknowledged that part of her regular job, but for her inability because of her vertigo problems and others, included climbing ladders and doing a certain amount of lifting and so on and so forth, and that she went back to work, and Walmart had her other co-workers perform those functions that would cause her the problems that made her unable to do those aspects. Now, there's a, under, I think it's the Dark opinion, there's a Scanlon's opinion, there's principle that the employer doesn't have to restructure the job in order to accommodate, at least under certain circumstances. What do we do with the notion that on a temporary basis, the employer was willing to allow other employees to perform her job function, and then suddenly make that into an argument as to, A, she could perform the job, and B, that they couldn't have been essential because other people were able to do them for her. That's the difficulty I'm having with that. Walmart seems to be, having allowed others to help her out, is now being hung out to dry because that just serves or wasn't an essential function. Well, again, that's assuming those three qualities, lifting, bending, and standing on a ladder were essential functions. Our argument is that they're marginal functions. There is nothing in the record from the defendant establishing what the essential functions of the job were, other than the disability report, which I've established was unreliable, and the one ambiguous statement by Ms. Cox that in response to the question, could you do your job with restrictions of no lifting, bending, or standing on ladders, and she said no. But that was an absolute restriction of those activities, and it doesn't establish whether those three activities were marginal functions or essential functions. The factors under the ADA regulation and statute, reassignment of marginal functions, is a recognized reasonable accommodation. So the question the court poses begs the question, were these functions for which she needed, were these tasks for which she needed help occasionally, essential functions of her job to restock and give customer service, or were they marginal functions? And we submit that the defendant didn't meet its burden relying on the two pieces of evidence they cite. The evidence in the record establishes that, one, she didn't need any help with the bending, that she could do her job without help as to that one of the three tasks. Two, that the standing on ladders was truly a marginal task. It occurred two to three times a week for two to three minutes, and it could have been accommodated by putting material at a lower level for her rather than storing it on a place that needed a ladder. So you're left with the question of the lifting, and the only evidence as to the lifting goes back to the disability report where it's recorded that she frequently, one-third to two-thirds of the day, lifted more than, insert information by interviewer, 25 pounds. Well, again, we don't know if that's accurate information based on the only evidence in the record as to the interviewer reporting that accurately. We don't know if Ms. Cox was told frequently means one-third to two-thirds of your day. Counselor, counselor, if I can interject. At the start you said you wanted to reserve five minutes for reply. Thank you. You've got four now. I understand that. Thank you, Judge. So the other point about the unreliability of that disability report is that it amounts to over 20 hours of activity that is inconsistent to be done, some of which is inconsistent to be done simultaneously during an eight-hour day. So, again, defendant hasn't met its burden as to that claim. Very quickly on the workers' comp discrimination claim, I wanted to point out that there is enough sufficient causal connection as to that case. When you look at the initial animus expressed by Walmart in staff meetings regarding workers' comp claims, the close proximity in time for Ms. Cox raising the issue in approximately August of 2007 and then being subjected to a string of three unwarranted disciplines for which she complained as being unfair at the time, the failure of the company to follow its own policies to provide up to a year of leave after exhausting FEMLA and OFLA leave. The other one I wanted to briefly mention was as to the interactive process where the court recognizes that Ms. Cox responded to the May 9th letter, post-termination letter, that she responded in time on May 13th prior to the deadline of May 14th, but then held that she cut off the interactive process when it was defendant who cut it off by refusing to give her extra time to respond and return to work when she was subpoenaed to court on the day she was to return to work according to the letter. I thank the Court. I'll reserve the rest of my time for rebuttal. Thank you. May it please the Court. My name is Rich Menighello and I represent Respondent Walmart Stores in this action. This case involves a direct application of the Supreme Court's decision in the Cleveland case demonstrating that when a plaintiff makes inconsistent statements that are unexplained regarding her physical condition in an application for Social Security Disability Insurance benefits that conflict with the underlying premise that she can be qualified under the Americans with Disabilities Act, the ADA, that her claim fails and that she's unable to meet the burden of proving that she's a qualified individual. However, this Court does not need to even look to the Cleveland case necessarily and the inconsistencies involved with her statements in order to find that she has failed to meet her burden of proving that she's a qualified individual and thus summary judgment was appropriately granted by the lower court. The Cleveland case in front of the U.S. Supreme Court and adopted by the Ninth Circuit in the Wire case cited on page 19 of our brief demonstrates that an ADA plaintiff bears the burden of demonstrating that she is qualified. The plaintiff in this case failed to do so leading to the summary judgment grant. First, speaking regarding the lifting, bending, and climbing ladders situation that counsel talked about, there are several other factors that led the lower court to find that these were essential functions. Chiefly among them, plaintiff's own admission on a questionnaire that she filled out in front of the Oregon Bureau of Labor and Industries. At the time, plaintiff commenced her action, her discrimination action before the lower agency. She filled out in a questionnaire, she answered a question, quote, could you perform all the essential functions without accommodation? The plaintiff herself answered by circling yes, but then in her own handwriting wrote, except getting on a ladder. This is on excerpt of record 450. But who has the burden? Counsel, who has the burden of establishing from Wal-Mart's standpoint whether something is essential function? Wal-Mart has not put anything in writing about a job description. Maybe I've missed it in the record. All it seems to me is that Wal-Mart's relying on what you are trying to characterize in effect as admissions by her that they are essential. But as the Supreme Court has recognized, and I think we've recognized, what the Security Administration is looking for is not the same as what the ADA and what it is looking for in terms of what an employer's job function description is, so that it and the disabled person can interact on to see whether or not the job can be performed with some accommodation. And her point is, as to Wal-Mart, my existing employer, not some hypothetical future employer, as to Wal-Mart, in this case, I can't perform what they tell me generally, but I have been able to go back at Wal-Mart, and they have been able to accommodate me on my limitations by allowing others to help me do this occasional work. So that's what Wal-Mart has done. Then the question that is left is, well, what's Wal-Mart's position? It is absolutely essential and that these temporary accommodations can't reasonably be done on an ongoing basis by instead of having her climb the ladders and do the other things, that the other people can do it. That's the problem. We're trying to construe her language in a different context, and Wal-Mart hasn't come forward with a clear statement affirmatively on its own part as to why it's an essential function that she must do given that these temporary accommodations can't be permanent accommodations reasonably. You're correct, Your Honor, that it's Wal-Mart's burden of proving what is an essential function of this position. And we believe we've provided enough information in our brief between the pages of 19 and 21 that demonstrate that lifting, bending, and standing on ladders is an essential function. However, if this Court believes that the evidence is insufficient in proving that Wal-Mart has met its burden in that regard, that does not mean that summary judgment was inappropriate because still plaintiff bears the ultimate burden of proving that she is qualified. And the totality of the information that was provided by plaintiff in both her Social Security Disability Insurance application by her own medical providers and the circumstances surrounding her situation demonstrate that as of February 2008, the last time she actually worked for Wal-Mart and thus forward, that she was utterly and completely disabled and unable to work in any capacity. It's important to know... Counsel, if I could interject a question on that. Does she have to prove she can do the essential functions without accommodation or just prove she can do them with a reasonable accommodation? She would have to prove that she could complete the essential functions with or without an accommodation. As I understand it, that's the status of the ADA. So does that mean that if she couldn't perform them without accommodation but she could perform them with accommodation, she would satisfy that standard? She would, but in this case she's proven that the essential functions, in this case she was unable to do with reasonable accommodation because she was unable to climb on ladders, she was unable to lift and bend to the extent required, and that others would have to do it for her. And as Judge Fisher pointed out earlier, the Dark v. Curry County case follows the EEOC enforcement guidance which states that it's unreasonable to require the reallocation of essential functions or to have others do the work for her. I understand that principle, but let's assume there wasn't a summary judgment here and that you were proceeding to a trial. Can you illuminate for me what would a jury instruction look like or what would a jury instruction say? How would it define what is an essential function as that might apply here? Sure. If we were doing a jury instruction on what an essential function is, I think we would focus on the EEOC Technical Assistance Manual. It's cited on pages 20 and 21 of our brief that states that where a job will not get done without its performance, the function is essential. I also think you would focus on the same Technical Assistance Manual which says that the amount of time spent on a function is relevant determining whether or not a function is essential. So in the absence of a clear-cut job description, you would look, I think, at those two things,  and here I believe we've proven that plaintiff would be unable to meet her burden under either of those standards. Getting back, I believe the – Wait a minute. Counsel, who has the burden of establishing that it's essential? The burden of establishing whether or not a function is essential lays with the defendant. Okay. So in your jury instruction, what would have gone to the jury in this case? It would have been no evidence from Walmart. It would have been just her statements that she couldn't do occasionally, couldn't do at least what is characterized by counsel for the plaintiff, is that are marginal or occasional requirements. You're suggesting that it's enough to get to the jury on your burden simply by relying on her characterization and the fact that she couldn't do some things, notwithstanding she was able to have other coworkers do the job when she couldn't. My recollection is the ADA regs themselves say one of the factors in assessing essential functions is what's the size of the workforce, how much – are these things that could be done, are there certain aspects that could be done without completely restructuring the job, which is what Dark was talking about. It could be done with those accommodations. Where's the evidence that says she can't? You're saying that as of February 28th, she absolutely couldn't do the job, period. Could you explain then what you mean by that if it's – Absolutely. I think different from what I've been talking about. Sure. I agree with you that the evidence in the record regarding what establishes an essential function might be somewhat limited, but that does not mean that as you state that there's been more than enough evidence in the record to demonstrate that plaintiff has failed to meet her burden of proving that ultimately she's qualified. And I would start with the vocational decision issued by the Social Security Administration on May 28th, 2008. So within a matter of days of her termination, that's excerpt of record 30 and 31, where the Social Security Administration concluded that plaintiff was, quote, incapable of performing any past relevant work, not capable of performing other work considering her medical impairments, and the rationale was that she was not able to sustain even sedentary work due to her physical problems. This demonstrates that no matter what plaintiff now says in terms of what she believes she would have been able to do, this decision was based upon the medical evidence she presented and her physicians presented in order for her to qualify for federal benefits. And that's just what Cleveland was talking about. They did not want a plaintiff to be able to go to one area of the government and say, please give me benefits, here's my medical condition, but on the other hand say, wait a second, here are things that I can do. The plaintiff at deposition in a post-termination litigation context deposition stated that she believed, I told the Social Security Administration I can do this work if I had some help. However, there's no indication in any of the filings that she presented to the Social Security Administration or any of the interviews done or the medical assessments that were done of her that she ever said anything like that or intended that she was able to do a certain amount of work if she had accommodations. I don't believe that the Cleveland case, which said that individuals can escape this inconsistency trap by explaining the inconsistencies away, meant that a plaintiff could simply say at a deposition or during the litigation, I told them I just needed some help and I could do the job. Instead, it's much more important to know that the plaintiff established that she had a full disability as of May 28, 2008, collected benefits and has since collected benefits and has never sought to correct the record to state, wait a second, that went too far. I really can do more than you actually state. And that's at the record at page, excerpt of record 237. Plaintiff can offer no support for the contention that a post-application litigation deposition testimony that alleges a simple verbal statement was made to Social Security would be enough to suffice to explain away that inconsistency. But even if we ignored Cleveland altogether and Cleveland didn't even exist here, I still believe plaintiff has not shown that she is qualified because the totality of the circumstances, again, noted in her functionality report filed and completed on April 7th, the vocational decision and her doctor's visits that soon followed demonstrate that this was an individual who was unable to work in any field in the American workforce. Since that time, not only has she not worked at all, she has not even looked for work. And that was true as of March 2010 when her deposition was taken. And those are on excerpt of records 73 and 78. We cite cases that demonstrate that circumstances after her termination can be used to be a critical assessment of determining whether or not qualification was appropriate or not. Those are cases that we cited from the Sixth and Eighth Circuits on page 24 of our brief. And so thus, her subsequent history is important as well. I would note that in a meta- Counsel, if I could ask you a question on that, on her subsequent history showing she didn't work after she got the Social Security benefits. That's certainly pertinent. Well, Your Honor, I'm sorry, Your Honor. Didn't she work? Didn't she work for Walmart? She didn't work after she started receiving benefits, Your Honor. Counsel, please let Judge Gould finish his question. Oh, I'm sorry, Your Honor. I thought he was completed. Yeah, I want to say, okay, didn't she work for Walmart with the help of others for a while after she got those benefits? No, Your Honor. What happened, the timeline is this. She applied for Social Security benefits at some point during her employment but was not qualified as having received the benefits until May of 2008 when the vocational decision came out, and she did not start to receive benefits until September 2008. The discrepancy in the record is caused by the fact that when the Social Security Administration needed to start a beginning date, they went to the point of March 2, 2007, is when she said she fell on her head. So they went earlier in time. She did work at some point for Walmart for several months past that, and I realize I'm out of time. I can finish explaining in less than 30 seconds here if you will allow me. She continued to work for points in time thereafter, but at the time in question when the Social Security Administration actually came to their conclusion, she had stopped working and hadn't worked for at least three months. I also believe the last point I'd make is on her application on page 40 of the excerpt of record, she even stated that she was trying to get the onset date stated earlier so that she could get additional benefits, and the Social Security Administration declined. I believe that's further evidence that this is a plaintiff who was trying to play two sides of the same fence. I apologize for going over, and I apologize for interrupting your question, Judge Gould. I was unable to hear you. If there's no further questions, my time has expired. Thank you. Okay, thank you. That's part of the problem with the video, I guess. I apologize. That's all right. Not your problem. Addressing the question of how does the court or the jury, as I believe the jury should determine it, what the essential functions are, there are federal regulations. They're cited in our opening brief at page 30 and 31, and they set forth criteria to be used in determining if a task is an essential function, including whether the position exists to perform that function. In this case, the manager's testimony establishes it was not. It existed to give customer service rather than lift or bend. Second criteria is a limited number of employees are available to carry out the essential functions. In this case, the plaintiff's declaration at ER 413 establishes that numerous other people were able to do lifting, bending, and standing on ladders. And the third function listed under federal regulations relevant to the case is the function is highly specialized such that the person was hired for the expertise or ability to perform the function. And here, again, a plaintiff's declaration at 413 establishes such is not the case. Counsel, if I could interject, I have one practical question. If Cox gets a remedy against Walmart on a theory she was qualified to work with accommodation, what happens then with the Social Security? Does she owe the money back to the government? Your Honor, I honestly do not know the answer to that question. I simply don't. I haven't researched that. I can't answer it for the court. It certainly poses a question. I recognize that. But whether or not she sought work afterward after she's terminated, based on her belief that's recorded throughout the record that she couldn't be hired with her conditions because nobody would hire her with those conditions and that she did need help to do her job, it goes down to if they haven't established those functions or essential functions, if there's a question of fact as to whether they're marginal functions, it is a reasonable accommodation under DARK and the ADA to reassign those marginal functions. Does a new prospective employer, not Walmart, if she applied to, let's say, Costco or Sam's Club, do they have the same duty to accommodate that Walmart, the earlier work, did? Yes, they would, Your Honor. The duty to accommodate would still apply as long as the tasks she was unable to perform were marginal functions. Any employer in hiring an individual subject to the ADA, and certainly the examples you cited are large enough they would be, would be held to the same standard of having to provide those accommodations to the qualified individual. Okay, thank you. Thank you, counsel. Thank you both and for bearing with us on the remote communication. Everybody came across well on video, at least from your end. Thank you very much. We'll stand in recess. Thank you. All rise. This court for this session stands adjourned.
judges: Fisher, Gould, Paez